UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

UNITED STATES OF AMERICA

       - against -                    **NOTICE OF MOTION**

RAFIQ SABIR,                        05 Cr. 673 (LAP)

              Defendant.        FILED ELECTRONICALLY

- - - - - - - - - - - - - - - - - - - - - - - - - - -- - - - -x


PLEASE TAKE NOTICE that the defendant RAFIQ SABIR will move this Court before the Honorable Loretta A. Preska, United States District Judge, Southern District of New York in the United States Courthouse, 500 Pearl Street, New York, New York at a time that is convenient for the Court, for an Order granting the following relief:

(1)  For an Order dismissing the indictment because the charges contained in the indictment violate the First and Fifth Amendments of the United States Constitution.

 (2) For an Order pursuant to Rule 12(b)(3) of the Federal Rules of Criminal procedure for a Motion to Suppress statement evidence, since such statements were the product of an unlawful warrantless arrest and because the defendant's right not to incriminate himself as well as the defendant's right to counsel were violated.

(3) For an Order pursuant to Rule 12(b)(3) of the Federal Rules of Criminal procedure for a Motion to Suppress physical evidence, since such evidence was illegally seized from the defendant's home and were the product of an invalid search warrant in violation of the Fourth Amendment.

(4)    For an Order granting the defendant a separate trial pursuant to Federal Rule of Criminal Procedure 8(a) and (b) and Federal Rule of Criminal Procedure 14(a).

(5)    For an Order directing the government to disclose to the defendant any and all acts which the government seek to introduce against the defendant pursuant to Federal Rule of Evidence 404(b) in such sufficient and reasonable time that the defendant may make a 404(b) motion to preclude the introduction of such evidence.

(6)    For an Order granting the defendant, RAFIQ SABIR, a Bill of Particulars pursuant to Federal Rule of Criminal Procedure 7(f).

(7)    For an order permitting RAFIQ SABIR to make such other and further motions as may be appropriate.

(8)    For an order permitting RAFIQ SABIR to join in such other motions made by any and all co-defendants that may be appropriate; and

(9)    For such other and further relief as to this Court may seem just and proper.

Dated:  July 14, 2006
        New York, New York

Yours, etc.

EDWARD D. WILFORD, Esq.
NATALI TODD, Esq.
Counsel for RAFIQ SABIR
20 Vesey Street Suite 400
New York, New York 10007
(212) 528-2741

TO:

Hon. Loretta A. Preska
United States District Judge
Southern District of New York
Daniel Patrick Moynihan
United States Courthouse
500 Pearl Street
New York, New York  10007

Karl Metzner, Esq.
Victor Hou, Esq.
Assistant United States Attorneys
United States Attorney's Office
Southern District of New York
Silvio Mollo Building
One Saint Andrew's Plaza
New York, New York  10007

Mr. Rafiq Sabir

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

UNITED STATES OF AMERICA,                     05 Cr. 673 (LAP)

      - against -                              **DECLARATION**

RAFIQ SABIR,
                                              FILED ELECTRONICALLY
          Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x


STATE OF NEW YORK                    )
COUNTY OF NEW YORK            :   ss .:
SOUTHERN DISTRICT OF NEW YORK )


      EDWARD D. WILFORD, Esq., pursuant to Title 28, United States Code, section 1746, hereby declares under the penalties of perjury:

      Natali Todd, Esq., and I are counsel for the defendant RAFIQ SABIR, and I make this declaration in support of the various forms of relief, as set forth in the annexed Notice of Motion.

      The statements asserted as facts are based upon an examination of the complaint, the indictment, the discovery material provided by the government, conversations with prosecutors and RAFIQ SABIR.  All matters about which your deponents lack personal knowledge are asserted herein upon information and belief.

      RAFIQ SABIR is named, in a multiple count Indictment charging him in one count with crimes related to providing assistance to a terrorist organization.

The first count charges the defendant, RAFIQ SABIR and the defendant, TARIK SHAH with conspiring to provide material support and resources to a Foreign Terrorist Organization, specifically al Qaeda, in violation of Title 18 U.S.C. §2339B.

The second count charges the defendant, RAFIQ SABIR, and the defendant, Tarik Shah with providing and attempting to provide material support and resources to a Foreign Terrorist Organization, specifically al Qaeda, ~~by~~ in violation of Title 18 U.S.C. §2339B and §2.

The third count charges the defendant, MAHMUD FARUQ BRENT, a/k/a MAHMUD AL MUTAZZIM with conspiracy to provide material support and resources to a Foreign Terrorist Organization specifically, Lashkar-e-Taiba, in violation of Title 18 U.S.C. §2339B .

The fourth count of the indictment charges the defendant, MAHMUD FARUQ BRENT, a/k/a MAHMUD AL MUTAZZIM with providing and attempting to provide material support and resources to a Foreign Terrorist Organization specifically, Lashkar-e-Taiba, in violation of Title 18 U.S.C. §2339B and §2.

The fifth count charges the defendant, TARIK IBN OSMAN SHAH, a/k/a TARIK SHAH a/k/a TARIK JENKINS, a/k/a ABU MUSAB, and the defendant ABDULRAHMAN FARHANE, a/k/a ABDERR FARHAN with conspiracy to violate Title 18 USC §2339A.

The sixth count of the indictment charges the defendant, ABDULRAHMAN FARHANE, a/k/a ABDERR FARHAN with violating Title 18 USC §1001(a)(2).

Counsel has moved to suppress statements of the defendant RAFIQ SABIR, allegedly made by him subsequent to his seizure at his residence in Florida.

Counsel for RAFIQ SABIR moves for suppression of physical evidence seized from the person and home of Mr. Sabir.

Counsel for RAFIQ SABIR, moves for an order directing that the trial of RAFIQ SABIR be severed from the trials of the other individuals named in the instant indictment pursuant to Federal Rule of Criminal Procedure 8(a) and (b) and Federal Rule of Criminal Procedure 14(a).

Counsel for RAFIQ SABIR, moves for an order directing the government to disclose to the defendant any and all acts which the government seek to introduce against the defendant pursuant to Federal Rule of Evidence 404(b) in such sufficient and reasonable time that the defendant may make a 404(b) motion to preclude the introduction of such evidence.

Counsel for RAFIQ SABIR, moves for an order granting the defendant, RAFIQ SABIR, a Bill of Particulars pursuant to Federal Rule of Criminal Procedure 7(f).

Counsel for RAFIQ SABIR, moves for an order permitting RAFIQ SABIR to make such other and further motions as may be appropriate.

Counsel for RAFIQ SABIR, moves for an order permitting RAFIQ SABIR to join in such other motions made by any and all co-defendants that may be appropriate.

Counsel for RAFIQ SABIR, moves for an order directing such other and further relief as to this Court may seem just and proper.

**WHEREFORE**, your declarant prays for an Order granting the relief requested in the Notice of Motion, or in the alternative a hearing to resolve the issues raised therein and for such other and further relief as to this Court may seem just and proper.

Dated: New York, New York
      June 14, 2006


                             _____
                                 EDWARD D. WILFORD

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA,                                    05 Cr. 763 (LAP)

   - against -                                            **DECLARATION**

RAFIQ SABIR,
                                                              FILED ELECTRONICALLY

        Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

State of New York            )
County of New York        :  ss .:
Southern District of New York    )

       RAFIQ SABIR pursuant to Title 28, United States Code, section 1746, hereby

declares under the penalties of perjury:

       1.  I am the defendant in the above captioned matter, who has been indicted by

the United States of America in an indictment charging me with conspiring to provide

and providing material support or resources to a foreign terrorist organization in

violation of 18 U.S.C. § 2339B.

       2.  I am presently fifty-one (51) years of age.  I am a graduate of the City College

of New York and Columbia University Medical School. I am a licensed medical doctor

in the State of New York.  I am an American citizen and I practice Islam as my religion.

I have worked as a physician for the last twenty-five (25) years in various hospitals in

the State of New York and throughout the world.  Notwithstanding my strong religious beliefs, my knowledge and fluency in the Arabic language is extremely limited.

3.  I was originally arrested on May 20, 2005, pursuant to an arrest warrant at my home in Boca Raton, Florida.

4.  At the time of my arrest I was home asleep until approximately 5:00 a.m. when I arose for my morning prayers.  Upon completion of my prayers I was awakened by a tremendously loud banging on my front door.  When I approached the door I looked through the peephole and observed that the source of the loud banging was law enforcement personnel.  I opened the door and immediately, several armed members of law enforcement burst into my home with guns drawn.  I was ordered to turn around and put my hands in the air.  I complied without hesitation, as I was extremely afraid for my safety and the safety of my wife and children who were all present in the home at that time.  I was then handcuffed, and without informing me of the reason for being at my home, nor any of my constitutional rights, I was bombarded with a slew of questions which I attempted to answer.

5.  I was initially asked if there were any weapons in the house; to which I replied yes there was a .12 gauge shotgun located in the garage.  Next I was asked who else was in the house and I informed the agents that my entire family, my wife and four (4) children were all home at that time.

6.  The agents then commenced a room to room search of my home.  Once the search was completed I was taken to my bedroom and told to change into a shirt and

pants that the agents provided me from my clothes.  I was in my pajamas at the time, and it was especially shameful, humiliating and embarrassing for me as a Muslim man to have to expose myself in total nakedness before these other men. As soon as I was dressed, I was handcuffed again having been uncuffed solely to afford me the opportunity to get dressed.

7.   I was then placed in a police vehicle and taken to the Boca Raton Police Station.  Once at the police station I was placed in a conference room with a desk and I was surrounded by agents.  The agents began firing questions at me asking me what was May 20th last Thursday all about, I was never advised of any rights although I was in custody and being questioned.  I replied that I didn't know what they were talking about.  I didn't do anything wrong.  I was not informed of my right to counsel, or my right to remain silent after I was taken into custody.  I was never advised of my right to consult with my counsel of choice.

8.   During the course of this interrogation one agent made himself particularly menacing and threatening and severely astonished and frightened me by both his tone and actions, I thought he would physically assault me. This agent was approximately thirty (30) years of age, six (6') feet tall with an acne scarred face, around two hundred twenty (220) pounds, black hair, cut short with no facial hair.

9.   I asked if I was under arrest and all of the agents left the room for a short period, they then returned and said yes I was under arrest.  I then requested that I be afforded an opportunity to consult with my lawyer prior to answering any more

questions.  I was then pressured to sign a document which stated that I voluntarily permitted the search of my home and voluntarily agreed to talk with the agents.  I specifically requested a lawyer but the only response was, "sign the document, sign the document." Initially I balked at signing but because of the intense pressure of the circumstances I found myself in and the intimidation tactics engaged in by law enforcement, out of pure fear I signed the document.

10.  I was held in the room for hours and finally I was given some pizza and soda after I had signed the document.  At approximately 11:00 a.m., I was transported to West Palm Beach.  During the ride I was repeatedly questioned without any advisement of my rights, by the same menacing agent who asked questions about Jihad u Akbar. When I replied it meant to struggle with yourself, he screamed, "tell me what it really means."  When we arrived at the county jail, the menacing agent told the jailers to place me in the stockade and left.

Dated: New York, New York
         July  , 2006

_____
RAFIQ SABIR

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA,                    05 Cr. 673 (LAP)

- against -

RAFIQ SABIR,                                                    FILED ELECTRONICALLY

                        Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x


# MEMORANDUM OF LAW
# IN SUPPORT OF
# <u>PRETRIAL MOTIONS FOR DEFENDANT RAFIQ SABIR</u>


<u>Preliminary Statement</u>

This memorandum of law is respectfully submitted in support of the Notice of

Motion of RAFIQ SABIR submitted herewith, seeking various forms of relief.

<u>Statement of Facts</u>

The defendant was originally arrested on May 28, 2005, pursuant to an

arrest warrant at his home in Boca Raton, Florida.

When the defendant was arrested he was home asleep and had just arisen for his

morning prayers. The defendant was awakened by a tremendously loud banging on

his front door by law enforcement personnel. The defendant opened the door and

immediately several armed members of law enforcement burst into his home with guns

drawn. The defendant was ordered to turn around and put his hands in the air, the

defendant complied without hesitation, out of extreme fear for his safety and the safety

of his wife and children who were all present in the home at that time. The defendant

was then handcuffed, and without informing the defendant of the reason for the presence of law enforcement officers being at his home, nor any of any constitutional rights the defendant was bombarded with a slew of questions which he attempted to answer.

The defendant was initially asked if there were any weapons in the house, the defendant replied that there was a .12 gauge shotgun located in the garage. The defendant was then questioned regarding the occupants of the defendant's family residence and  informed the agents that his entire family, his wife and four (4) children were all home at that time.

The agents then commenced a room to room search of the defendant's home, once the search was completed the defendant was taken to his bedroom and told to change into a shirt and pants that the agents provided to him.  The defendant was dressed in his pajamas at the time, and it was especially shameful, humiliating and embarrassing for the defendant as a Muslim man to have to expose himself in total nakedness before these other men. As soon as the defendant was dressed he was handcuffed again having been uncuffed solely to afford him the opportunity to get dressed.

The defendant was then placed in a police vehicle and taken to the Boca Raton Police Station.  Once at the police station the defendant was placed in a conference room with a desk and he was surrounded by agents.  The agents began a succession of rapid fire questions at the defendant asking him specifically about May 20, 2005 and what the

events of that day meant. The defendant was never advised of any rights although he was definitely in custody and definitely being interrogated. The defendant was not informed of his right to counsel, or his right to remain silent after he was taken into custody. I was never advised of my right to consult with my counsel of choice.

During the course of this interrogation the defendant was particularly intimidated and frightened by one agent who was approximately thirty (30) years of age, six (6') feet tall an acne scarred face, around two hundred twenty (220) pounds, black hair, cut short with no facial hair.

The defendant asked if he was under arrest and all of the agents left the room for a short period, they then returned and the defendant was told the he was under arrest. The defendant at that point in the interrogation process specifically requested the opportunity to consult with counsel prior to answering any more questions. The defendant was then subjected to enormous pressure to sign a document which stated that he voluntarily permitted the search of his home and voluntarily agreed to talk with the agents. The defendant specifically requested a lawyer but the only response from the agents was to sign the document. Finally the defendant signed the document after initially balking at signing but because of the intense pressure of the circumstances and the intimidation tactics engaged in by law enforcement, out of fear the defendant signed the document.

The defendant was held in the room for hours and finally was given some pizza and soda after he signed the document. At approximately 11:00 a.m. the defendant was

transported to West Palm Beach.  During the course of the ride the defendant was repeatedly questioned without any advisement of rights, by the same agent who had earlier intimidated the defendant, about Jihad u Akbar. When the defendant replied it meant to struggle with yourself, the agent commenced to scream and yell at the defendant to tell the agent what the term really meant.

The defendant's home was searched pursuant to a search warrant based upon an alleged violation of Title 18 USC §2339B.

## POINT I

## THE INDICTMENT MUST BE DISMISSED

The defendant has standing to bring this claim, and the claim is justiciable. The defendant is currently *being* prosecuted under Title 18 U.S.C. § 2339B;

The statute criminalizes and proscribes providing assistance to organizations designated as terrorist organizations. The statute on its face is unconstitutional because it is vague, and over-broad, therefore void and violates the United States Constitution. The Supreme Court has determined that a statute is void for vagueness when three criteria are met: (1) to avoid punishment for behavior that could not have been known to be illegal; (2) to avoid subjective arbitrary and discriminatory enforcement by government officers; (3) to avoid any chilling effect on the exercise of the right of speech and association guaranteed under the First Amendment. *Grayned v. City of Rockford*, 408 U.S. 104 (1972).

When a law interferes with the right of free speech, or of association the court will apply a more stringent vagueness test. *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489 (1982).

Under the Fifth Amendment Due Process Clause, a criminal statute is void for vagueness if it fails to give a person of ordinary intelligence fair notice that conduct contemplated by the individual is forbidden by the statute. *United States v. Harriss*, 347 U.S. 612 (1954).

In the instant case the statute does not sufficiently identify the prohibited conduct and the defendant had no way of knowing that his conduct would violate the statute.

The defendant herein is charged with a criminal statute. The scrutiny required is therefore higher than when the potential for criminal charges exists. The statute involved herein, Title 18 U.S.C. § 2339B is both vague and over broad. The ability of the Legislative branch to promulgate laws that protect national security is beyond cavil. However, the laws that are passed have to at the very least satisfy minimal requirements when they impact upon First Amendment free speech and association considerations and Fifth Amendment Due Process Clause considerations.

It is well settled that "Due Process does not require impossible standards of clarity." *Kolendar v. Lawson*, 461 U.S. 352 (1983). However, the need for clarity, thereby avoiding speculation, is necessarily enhanced when criminal sanctions are at issue, or when constitutional freedoms are challenged. *Information Providers' Coalition for the First Amendment v. FCC* , 928 F.2d 866 (9th Cir. 1991).

The activity specifically criminalized in count one and count two of the indictment charging the defendant with violating Title 18 U.S.C. § 2339B, necessarily requires the defendant to have violated Title 18 U.S.C. § 2339A (b).

The actions attributed to the defendant in count one and count two of the indictment charging the conspiracy to violate 18 U.S.C. § 2339B as well as the

substantive violation of 18 U.S.C. § 2339B respectively cannot be constitutionally criminalized by this statute.

Without question, the government's interest in national security is a compelling one, permitting the government to impose restrictions on the ability of citizen to maintain association with foreign entities. *Humanitarian Law Project v. Reno*, 9 F.Supp.2d 1176, 1192 (C.D.Cal 1998); *Farakhan v. Reagan*, 609 F.Supp. 506 (D.C.D.C. 1987) *aff'd* 851 F.2d 1500. Mr. Sabir does not contest the government's ability to protect national security. However, Mr. Sabir objects to the constitutionality of the statutes he has been charged under, as applied to his conduct. The government does not have unfettered discretion "and it does not mean that simply because a statute deals with foreign relations it can grant the Executive totally unrestricted freedom of choice." *Humanitarian Law Project*, supra quoting *Zemel v. Rusk,* 381 US 1 at 17 (1965).

The statute in question requires intent that one of the enumerated acts be the intended consequence of the material assistance or support provided to the designated terrorist organization. The controlling statute as charged in the indictment is necessarily void for vagueness. As stated in the preceding paragraphs, a statute has been recognized as void for vagueness for three primary reasons "(1) to avoid punishing people for behavior that they could not have known was illegal; (2) to avoid subjective enforcement of the laws based on 'arbitrary and discriminatory enforcement' by government officers; and (3) to avoid any chilling effect on the exercise of First

Amendment freedoms." *Grayned v. City of Rockford*, 408 US 104 (1972); *Foti v. City of Menlo Park*, 146 F.3d 629 (9th Cir. 1998).

The instant charges against Mr. Sabir satisfies the above three elements without question. Mr. Sabir could not have known his conduct to be unlawful and therefore should not be punished. The defendant did not engage in any conduct with the intent that the activity specifically criminalized would occur. It is also apparent that the government's subjective application of the statute to Mr. Sabir's conduct, is arbitrary and capricious, which chills the effect of fundamental constitutional freedoms. The activity in the instant case which the government seeks to criminalize, is not activity that the statute provides fair notice that the conduct engaged in by the defendant would constitute a criminal act.

When a statute can make a citizen a defendant the citizen is entitled to enhanced notice under the Due Process Claus of the Fifth Amendment. *Information Providers' Coalition for the Defense of the First Amendment v. FCC,* 928 F.2d 866, and "The areas of permissible indefiniteness narrows ... when the regulation invokes criminal sanctions and potentially affects fundamental rights." *United States v. Robel*, 389 US 258 at 275 (Brennan, J. Concurring) (1967).

For the defendant to be guilty of the crimes charged would require that any activity involving an individual member of al Qaeda necessarily means that you have the intent to assist al Qaeda and its goals.

Clearly this is not the intent of the statute because specific intent to commit the crimes of assisting an individual terrorist is different. Without the assumption and speculation that any assistance to a member of al Qaeda individually is *ipso facto* intent to assist al Qaeda (as an organization) thus violating 18 U.S.C. § 2339B, there is insufficient notice to the citizen of reasonable intelligence that assisting a member of al Qaeda is violative of the statute.

The defendant, a medical doctor, is charged in a six-count indictment, alleging in Count One and Count Two that defendant violated Title 18, U.S.C. §2339B for providing material support to a terrorist foreign organization, namely al Qaeda, in that, defendant agreed to provide medical support to wounded Jihadists.

Under Title 18 U.S.C. §2339BA (b), the term "material support or resources" is defined as follows:

> means any property, tangible or intangible, or service, including currency or monetary instruments or financial securities, financial services, lodging, training, expert advice or assistance, safe houses, false equipment, facilities, weapons, lethal substances, explosives, personnel (1 or more individuals who may be or include oneself), and transportation, **except medicine** or religious materials.

The statute as applied to Dr. Sabir, is constitutionally over-broad for vagueness on its face so as to deny Dr. Sabir, the right to practice medicine as a profession in violation of the United States Constitution. The statute infringes upon and impairs constitutionally protected conduct while proscribing non-criminal conduct without

adequate notice, and give government officials unfettered discretion in enforcement, causing individuals to avoid lawful activity and to commit crimes unknowingly.

Under the Due Process Clause, a criminal statute is void for vagueness if it fails to give a person of ordinary intelligence fair notice that conduct contemplated is forbidden by the statute. United States v. Harriss, 347 U.S. 612 (1954).

A challenge to the statute based on vagueness grounds requires the court to consider whether the statute is sufficiently clear so as not to cause persons "of common intelligence... necessarily to guess at its meaning and to differ as to its application." Connally v. General Const. Co., 269 U.S. 385, 391, 70 L.Ed. 322, 46 S. Ct. 126 (1926).

Upon such consideration, the Court determines that a statute is void for vagueness when three criteria are met: (1) to avoid punishment for behavior that could not have been known to be illegal; (2) to avoid subjective arbitrary and discriminatory enforcement by government officers; (3) to avoid any chilling effect on the exercise of the right of speech and association guaranteed under the First Amendment. Grayned v. City of Rockford, 408 U.S. 104 (1972).

In the instant case, the statute does not sufficiently identify the prohibited conduct so that defendant in his profession and practice as a medical doctor, could know, what if any of his conduct as it relates to the practice of medicine would violate the statute. Practicing medicine does include treating people with injuries and illnesses. It should be noted that Webster defines a doctor as a person qualified or licensed to practice

medicine, and further defines medicine as the art of science of diagnosing, treating, or preventing disease. For a doctor, there is no difference.

The mere fact that the government charged Dr. Sabir in an indictment for violating a statute that infringes upon his Fifth Amendment Constitutional right as a medical doctor, clearly demonstrates the vagueness of the statute in allowing the government to employ a subjective, arbitrary and discriminatory enforcement of the statute.

The statute's plain language is not apparent; even with the normal tools of statutory construction, and the government seeks to make a distinction in their subjective interpretation that medicine is narrowly defined and cannot encompass any activity that Dr. Sabir as a medical doctor engaged or attempted to engage in. In essence, because the statue is so vague, the government by its suggestion, seeks to reconstruct the statute. This is impermissible and is a matter for the Legislature. The language of the statute is not subject to judicial construction which would cure the vagueness without running afoul of the Legislature's intent.

As a medical doctor, Dr. Sabir is committed to saving lives, regardless of the status of the individuals because to do otherwise, would be to violate his cannons of ethics. A doctor, similar to an attorney, should not be limited to who he can treat, however unpopular such an individual may be.

To be sure, the government's interest in national security is a compelling one, permitting the government to impose restrictions on the ability of citizens to maintain association with foreign entities. Humanitarian Law Project v. Reno, 9 F. Supp.2d 1176

(C.D.Cal 1998); <u>Farakhan v. Reagan</u>, 609 F. Supp. 506 (D.C.D.C. 1987) *aff'd* 851 F.2d 1500 (1988). Additionally, the ability of the Legislative branch to promulgate laws that protect national security is beyond cavil.

However, criminalizing the act of providing medical treatment to designated terrorist organizations without requiring a showing of specific intent to further the organizations terrorist activities, or without providing notice of what conduct within defendant's profession as a doctor is criminal, is impermissibly vague and over-broad.

The statute is unconstitutional as applied to defendant's conduct as a medical doctor because it violates his 5th Amendment by criminalizing the act of providing medical assistance to designated terrorist organizations without requiring a showing of specific intent to further the organization's lawful terrorist activities, and by doing so in an impermissibly vague and over-broad manner.

Title 18 U.S.C. §2339B makes it clear that the proscription of the unlawful conduct of providing material support or resources to a foreign terrorist organization, that the person must know that the organization is a terrorist organization. Material qualifies support. Thus, the support must be relevant and necessary to terrorism.

In other words, "material support" by its plain language means that the act affording support must be of a kind and degree that has relevance and importance to terrorist activity, terrorists and terrorist organizations. Thus, mere support is insufficient and does not rise to the level of materiality. The statute goes on to identify a long list of specific extremely serious crimes of terror. However, medicine is excepted. One could

not, and should not be prosecuted for providing medically related services, unless of course, the medically related services is of danger to human life; *for example*, developing toxins that could harm human life.

The statute prohibits constitutionally protected conduct and violates the Fifth Amendment Due Process Clause and is therefore invalid for over-breadth. Any attempt as the government posits to subjectively and arbitrarily interpret the statute because of its vagueness is tantamount to wholesale revision of a Legislative Act; one that the government is not empowered to engage in on its own. Any attempt by the court to construe the statute to that suggested by the government would likely result in transforming an otherwise over-broad statute into an impermissibly vague one; the statute which is already unclear, would have several meanings, but as a matter of judicial decision, would stand for something entirely different. Citizens would still not be on notice as to the prohibited conduct.

The defendant did not engage in any conduct with the intent that the activity specifically criminalized would occur. "Due Process does not require impossible standards of clarity." Kolender v. Lawson, 461 U.S. 352 (1983). However, the requirement of clarity is enhanced when criminal sanctions are at issue or when the statute abuts upon sensitive areas of basic First Amendment Freedoms." Information Providers' Coalition for the Defense of the First Amendment v. FCC, 928 F.2d 866 (9th Cir. 1991); and "[the] areas of permissible indefiniteness narrows... when the regulation invokes criminal sanctions and potentially affects fundamental rights." United States v.

<u>Robel</u>, 389 U.S. 258, 275 (1967).  The Vagueness Doctrine requires "fair warning that...

contemplated conduct constitutes a crime" <u>Bouie v. City of Columbia</u>, 378 U.S. 347, 355

(1964).  This statute does not provide such a warning.

Accordingly, the statute is unconstitutional and void for vagueness as applied to

Dr. Sabir and the First and Second Counts of the indictment must be dismissed.

### Conclusion

For all the reasons stated above, the First and Second counts of the indictment

must be dismissed as unconstitutional.

### POINT II

### THE DEFENDANT'S POST ARREST STATEMENTS MUST BE SUPPRESSED

The defendant was originally arrested on May 28, 2005, pursuant to an arrest warrant at his home in Boca Raton, Florida.

When the defendant was arrested he was home asleep and had just arisen for his morning prayers. The defendant was awakened by a tremendously loud banging on his front door by law enforcement personnel. The defendant opened the door and immediately several armed members of law enforcement burst into his home with guns drawn. The defendant was ordered to turn around and put his hands in the air, the defendant complied without hesitation, out of extreme fear for his safety and the safety of his wife and children who were all present in the home at that time. The defendant was then handcuffed, and without informing the defendant of the reason for the presence of law enforcement officers being at his home, nor any of any constitutional rights the defendant was bombarded with a slew of questions which he attempted to answer.

The defendant was initially asked if there were any weapons in the house, the defendant replied that there was a .12 gauge shotgun located in the garage. The defendant was then questioned regarding the occupants of the defendant's family residence and  informed the agents that his entire family, his wife and four (4) children were all home at that time.

The agents then commenced a room to room search of the defendant's home, once the search was completed the defendant was taken to his bedroom and told to

change into a shirt and pants that the agents provided to him.  The defendant was dressed in his pajamas at the time, and it was especially shameful, humiliating and embarrassing for the defendant as a Muslim man to have to expose himself in total nakedness before these other men. As soon as the defendant was dressed he was handcuffed again having been uncuffed solely to afford him the opportunity to get dressed.

The defendant was then placed in a police vehicle and taken to the Boca Raton Police Station.  Once at the police station the defendant was placed in a conference room with a desk and he was surrounded by agents.  The agents began a succession of rapid fire questions at the defendant asking him specifically about May 20, 2005 and what the events of that day meant.   The defendant was never advised of any rights although he was definitely in custody and definitely being interrogated.   The defendant was not informed of his right to counsel, or his right to remain silent after he was taken into custody.  The defendant was never advised of his right to consult with my counsel of choice.

During the course of this interrogation the defendant was particularly intimidated and frightened by one agent who was approximately thirty (30) years of age, six (6') feet tall with an acne scarred face, around two hundred twenty (220) pounds, black hair, cut short with no facial hair.

The defendant asked if he was under arrest and all of the agents left the room for a short period, they then returned and the defendant was told the he was under arrest.

The defendant at that point in the interrogation process specifically requested the opportunity to consult with counsel prior to answering any more questions. The defendant was then subjected to enormous pressure to sign a document which stated that he voluntarily permitted the search of his home and voluntarily agreed to talk with the agents.  The defendant specifically requested a lawyer but the only response from the agents was to sign the document.  Finally, the defendant signed the document after initially balking at signing but because of the intense pressure of the circumstances and the intimidation tactics engaged in by law enforcement.  Out of fear the defendant signed the document.

The defendant was held in the room for hours and finally  was given some pizza and soda after he signed the document.  At approximately 11:00 a.m. the defendant was transported to West Palm Beach.  During the course of the ride the defendant was repeatedly questioned without any advisement of rights, by the same agent who had intimidated the defendant earlier, about Jihad u Akbar. When the defendant replied it meant to struggle with yourself, the agent commenced screaming and yelling at the defendant to tell the agent what the term really meant.

Because the defendant's rights under the Fifth Amendment to the Constitution, regarding self-incrimination were clearly violated by the actions of the agents any and all post arrest statements must be suppressed.  *Dunaway v. New York*, 442 US 200 (1980); *Miranda v. Arizona*, 384 U.S. 436 (1966); *Maine v. Moulton*, 474 U.S. 159 (1985); *Edwards v. Arizona*, 451 U.S. 477 (1981); *Alexander v. Connecticut*, 876 F2d. 277 (2d Cir. 1989); *United*

*States v. Scalf*, 708 F2d. 1540 (10th Cir. 1983); *United States v. Montgomery*, 714 F2d. 201 (1st Cir. 1983); *United States v. Roberts*, 690 F.Supp. 1368 (Dist. of Vermont 1988); *United States v. Harris*, 19 M.J. 331 (1985).

The post arrest statements of the defendant were obtained without affording the defendant an opportunity prior to waiving his rights against self-incrimination, without being properly advised of his right against self incrimination, and then exercising a knowing and intelligent waiver of that right. The alleged statements were obtained without a knowing, intelligent and voluntary waiver of the defendant's rights against self-incrimination. The defendant's statements were the result of custodial interrogation in which his will was overborne by the agents. The agents purposefully engaged in this conduct to foster an environment of fear designed to cause the defendant to succumb to the superiority of the government. The defendant asserted his right to counsel during his initial interrogation yet notwithstanding that request the interrogation continued apace without any consideration afforded Mr. Sabir's request to have counsel.

The government must prove by a preponderance of the evidence that RAFIQ SABIR waived his *Miranda* rights. *Colorado v. Connelly, 479 U.S. 157, 168 (1986).* In order to prove a valid waiver, the government must show (1) that the relinquishment of the defendant's rights was voluntary and (2) that the defendant had a full awareness of the right being waived and the consequences of waiving that right. *See, Moran v. Burbine, 475 U.S. 412, 421 (1986).*

It is well settled that a waiver of *Miranda* rights is valid only if it is the product of a knowing and voluntary choice. *See, Colorado v. Spring, 479 U.S. 564, 573 (1987); United States v. Bye, 919 F.2d 6, 8-9 (2d Cir. 1990); United States v. Mathurin, 148 F.3d 68 (2d Cir. 1998); Dickerson v. United States, 500 U.S. 428 (2000).* It has also established that the "question of waiver must be determined on 'the particular facts and circumstances surrounding [each] case.'" Id. In assessing the validity of a waiver, courts must analyze the totality of the circumstances surrounding the interrogation. *Moran v. Burbine, 475 U.S. 412 (1986).* The defendant requests a voluntariness hearing. *18 U.S.C. 3501 (a); Sims v. Georgia, 385 U.S. 538, 543-44 (1967).*

The statements must be suppressed or in the alternative a hearing granted to resolve the issues raised herein.

# POINT III

## THE ITEMS SEIZED FROM THE DEFENDANT'S
## HOME MUST BE SUPPRESSED

RAFIQ SABIR moves for suppression of the items recovered from his home as fruit of the poisonous tree, obtained in violation of his right to be free from unreasonable searches and seizures pursuant to the Fourth Amendment of the United States Constitution.

The examination of the propriety of the police conduct must necessarily commence with an inquiry as to whether or not the requirements of the Fourth Amendment were satisfied. In the case where there is a search pursuant to a warrant of the home of an individual that does not comport with the requirements and protections afforded individuals under the Fourth Amendment of the United States Constitution any physical evidence obtained during that search must be suppressed.

The home of Dr. Sabir was searched pursuant to a search warrant[1] yet the fact that probable cause to issue a warrant was determined by a Magistrate does not end the inquiry.

The government obtained the warrant to search Dr. Sabir's home on the basis of an application to a United States District Court Judge. The application was not

---

1. To date the defendant has not been provided with the affidavit or actual search warrant, and therefore it is respectfully requested that the defendant be permitted to expand and renew this portion of his motion should materials contained in the warrant itself or the affidavit require that this issue be revisited.

pursuant to FISA and thus not governed by the FISA standards of review *vis a vis* the propriety of the information relied upon to issue the search warrant.

The search was conducted pursuant to a warrant and therefore the propriety of the search is subject to Fourth Amendment analysis in the context of Fourth amendment jurisprudence.

The search warrant was issued based upon an overbroad and vague statute that as applied to Dr. Sabir is unconstitutional. There is no good faith exception that would support the recovery of evidence being constitutionally permissible when the statute that supports the warrant itself is unconstitutional.

Inevitable discovery is also not applicable to the instant fats and circumstances because the search of the defendant's home would have never occurred and the seized evidence recovered, but for the search predicated upon a search warrant issued upon an unconstitutional statute.

The search warrant was predicated upon (upon information and belief see Footnote 1) a representation that the defendant had violated Title 18 U.S.C. 2339B.

However, as discussed above in the motion to dismiss the indictment against Dr. Sabir, the statute which it is alleged that Dr. Sabir violated is unconstitutional and the conduct which Dr. Sabir allegedly engaged in is non-criminal conduct specifically exempted by the statute on its face. Therefore, the search warrant based upon this conduct is invalid and any evidence recovered as a result of the search predicated on said warrant must be suppressed.

The totality of circumstances surrounding the search of Mr. Sabir's home requires that any and all items recovered therefrom be suppressed, and that in the alternative a hearing granted to determine the issues raised herein.

## POINT IV

### Severance of the Defendant's Trial is Warranted

Severance is the appropriate remedy when it serves to protect the integrity of the proceedings and the trial rights of all the defendants. On the one hand, severance provides Dr. Rafiq Sabir with an opportunity to place before this jury any relevant, material evidence on the issues of guilt and innocence, without prejudicing the trial rights of Tarik Shah, the only defendant named in a count of the indictment along with Dr. Sabir.

A fundamental constitutional right is the defendant's Sixth Amendment right to a fair trial and the ability to present evidence the only remedy to achieve this goal is a severance of Dr. Sabir's case.

### Severance is Required Ensure that Dr. Sabir's Sixth Amendment Right to Present Evidence is Preserved

The defendant, Dr. Sabir, does not speak or understand Arabic on a conversational level. However, defendant Tarik Shah speaks Arabic and has had a relationship with Dr. Sabir for more than twenty years. The defendant Shah is aware of the fact that Dr. Sabir is unable to understand or speak Arabic based upon Shah's interaction with Dr. Sabir over the years.

Dr. Sabir therefore intends to call the co-defendant, Tarik Shah, to testify in his behalf concerning Dr. Sabir's lack of knowledge and fluency of Arabic.

At a joint trial of Dr. Sabir and Tarik Shah, defendant Shah would be able to assert a Fifth Amendment privilege against self incrimination and refuse to testify before a jury considering his guilt. At separate trials, Dr. Sabir would be able to call defendant Shah to testify without the foregoing concerns.

A joint trial would therefore clearly negatively impact a substantial trial right of Dr. Sabir, *i.e.*, the right to present evidence under the Sixth Amendment of the U.S. Constitution. Thus under *Zafiro*, a separate trial would be appropriate to afford Dr. Sabir the ability to exercise his Sixth Amendment right to present evidence.

**Severance is Appropriate Because Dr. Sabir is Improperly Joined in this Indictment**

The government has improperly joined Dr. Sabir in an indictment that charges three separate and distinct conspiracies. The mere fact that there is a nexus between all four (4) men, that being Tarik Shah, Faruq Brent, and Abdulrahman Farhane, does not mean that the prosecution of Shah, Farhane, Brent and Dr. Sabir must be joined.

The government alleges no nexus, either factually or otherwise whatsoever between the conspiracy charged against Dr. Sabir and that charged against Brent individually and that charged as to defendants Shah and Farhane.

The issues to be decided with respect to each charged conspiracies is distinct. With respect to count three and count four of the indictment the evidence and proof of

MAHMUD FARUQ BRENT, a/k/a MAHMUD AL MUTAZZIM conspiring and/or providing and attempting to provide material support and resources to a Foreign Terrorist Organization specifically, Lashkar-e-Taiba, has no bearing or relation to the charges in counts one and two as to Dr. Sabir.

The evidence the government will introduce against TARIK IBN OSMAN SHAH, a/k/a TARIK SHAH a/k/a TARIK JENKINS, a/k/a ABU MUSAB, and the defendant ABDULRAHMAN FARHANE, a/k/a ABDERR FARHAN with respect to their alleged conspiracy to violate Title 18 USC §2339A has no connection or relation of any kind to the proof the government has to introduce against Dr. Sabir to prove counts one and two of the indictment.

The evidence the government will need to prove the guilt of the defendant ABDULRAHMAN FARHANE, a/k/a ABDERR FARHAN with respect to count six, the 1001 violation clearly is devoid of any connection to the necessary proof against Dr. Sabir.

In counts three and four MAHMUD FARUQ BRENT, a/k/a MAHMUD AL MUTAZZIM is charged with conspiring and/or providing and attempting to provide material support and resources to a Foreign Terrorist Organization specifically, Lashkar-e-Taiba, but Dr. Sabir is charged with conspiring and providing or attempting to provide material assistance to an entirely different organization, i.e. al Qaeda. To permit the government to jointly try defendants charged with aiding two distinct terrorist organizations violates the letter and the spirit of Federal Rule of Criminal

Procedure 8(b) in that, the only connection is allegedly to terrorism in the general sense and not to specific common transactions amongst the defendants. The same is true with respect to the charges in counts five and six.

The evidence against Dr. Sabir is not the same evidence against the other defendants, therefore distinct conspiracies are charged in separate counts that do not name specifically other defendants named in the indictment. Basic joinder rules therefore require severance.

The government seeks to try these men jointly not because of judicial economy, but rather in a covert attempt to use the specter of terrorism to undermine the jury's ability to consider each defendant and the proof against Dr. Sabir individually.

By charging these totally disconnected conspiracies with absolutely no relationship in one indictment, the government basically posits that simply because the allegation is a violation of §2339, then it is proper to join the defendants. The particular proof which the government must present to establish the guilt of Dr. Sabir has no relation to the proof and with respect to the conspiracy alleged against defendants Shah and Farhane, Shah and Brent or Farhane and Brent individually.

Pursuant to Rule 14 of the Fed. Rules of Crim. Proc., the court may order severance if the court finds sufficient prejudice. The prejudice detailed herein requires severance.

**Spill-over Prejudice Requires a Severance of Dr. Sabir's Trial**

While "spillover prejudice" can require severance, the defendant alleging such prejudice bears a heavy burden. *United States v. Rosa, 11 F.3d 315, 341 (2d Cir. 1993)*. To succeed, a defendant must show that the spillover prejudice would constitute clear and substantial prejudice resulting in a manifestly unfair trial.

The Supreme Court has made it clear, under *Zafiro v. United States*, 506 U.S. 534 (1993), that the trial court should grant a severance, under Rule 14, when the jury is prevented from reaching a reliable judgment about guilt or innocence of a defendant.

The spillover prejudice is significant and its impact must be considered in determining whether a joint trial of the defendants charged in the indictment is appropriate. In order to ensure that the jury considers only the evidence against Dr. Sabir, a joint trial would necessitate that Dr. Sabir continually highlight the fact that Shah, Brent and Farhane were involved in separate conspiracies; thereby becoming a second prosecutor.

Dr. Sabir would have to accuse Tarik Shah of lying in order to establish that the information contained in the indictment was false. Dr. Sabir was not the source of the information contained in count one to wit, Dr. Sabir was willing to provide "among other things medical support to wounded jihadists", presumably members of al Qaeda.

Dr. Sabir never stated to anyone at anytime that he was willing to provide "among other things medical support to wounded jihadists" particularly not to any government agent or operative. No tape recording, or other recording of the alleged statement attributed to Dr. Sabir exists. Thus the only other source of the information concerning

Dr. Sabir's alleged intentions to "among other things medical support to wounded jihadists" is Tarik Shah. The defendant, Dr. Sabir will be asserting at trial that Tarik Shah, or anyone else who is the source of the alleged statement is lying. Thus creating a situation that requires severance.

The defendant herein would be in the same position as the defendant in *United States v. Serpoosh, 919 F.2d 835 (2d Cir. 1990).* The *Serpoosh* court held that severance was warranted when the co-defendants "each characterized the other defendant as a liar who concocted his story to escape blame." *Id. at 838*. In that case, the defenses were mutually antagonistic because one defendant argued that the other framed him and that the co-defendant was the one who actually committed the crime. Id. The Government responded by arguing that both defendants were not telling the truth, and that both were in fact guilty. See id.

Unlike the defendant in *United States v. Gotti*, 2004 U.S. Dist. LEXIS 45 (SDNY 2004) the defendant herein must argue his innocence and necessarily make a liar out of his co-defendant, exactly like the situation in *Serpoosh*.

In *United States v. Bin Laden*, 109 F.Supp. 2d 211 9 (SDNY 2000), Judge Sand opined that the *Serpoosh* line of cases had been effectively overruled by *Zafiro,* where it was stated that "mutually antagonistic defenses are not prejudicial per se," and that even when they are prejudicial, "Rule 14 does not require severance," but rather "leaves the tailoring of the relief to be granted, if any, to the district court's sound discretion." relying on *United States v. Haynes, 16 F.3d 29, 32 (2d Cir. 1994).*

However the facts and circumstances of the instant case do not provide the court with the ability to fashion any other relief save severance to comport with *Zafiro*. The decision to grant or deny severance is "committed to the sound discretion of the trial judge." *United States v. Blount, 291 F.3d 201, 209 (2d Cir. 2002).*

Joint trials are often particularly appropriate in circumstances where the defendants are charged with participating in the same criminal conspiracy, as in *United States v. Salameh, 152 F.3d 88, 115-16 (2d Cir. 1998)* (per curiam) (noting that spillover prejudice is unlikely in cases where defendants are charged in same conspiracy). *United States v. Spinelli*, 352 F.3d 48 (2d Cir. 2003) held that because the defendants were charged in the same conspiracy the logic of *Salameh* was applicable. However, herein the defendants are not all charged with the same conspiracy and thus joint trials become less compelling and the impact of spill-over prejudice must be examined more closely. This is particularly true when one considers, that the denial of a severance motion is "virtually unreviewable" *United States v. Serpoosh, 919 F.2d 835, 837 (2d Cir. 1990)* (quoting *United States v. Stirling, 571 F.2d 708, 733 (2d Cir. 1978))* "There is a preference in the federal system for joint trials of defendants who are indicted together." *Zafiro v. United States, 506 U.S. 534, 537, 122 L. Ed. 2d 317, 113 S. Ct. 933 (1993).* Given the lack of the interconnectedness of the cases against the jointly indicted defendants a "miscarriage of justice" will occur if a severance is not granted. See *United States v. DeVillio, 983 F.2d 1185, 1192 (2d Cir. 1993).* Therefore the court must carefully examine

the issues raised herein by the defendant and weigh the defendant's constitutional rights against judicial economy. Such an analysis requires that severance be granted.

The defendant will be unduly prejudiced from the "spillover" based on the presentation of evidence related to the activity charged in Counts three, four, five and six.

In *Zafiro*, the Supreme Court held that "the petitioners have not shown that their joint trial subjected them to any legally cognizable prejudice." *Id at 541*. However herein for the reasons stated above the defendant, Dr. Sabir, has demonstrated that a substantial, fundamental trial right of his would be compromised and that he would suffer from spill-over prejudice. Severance is the appropriate remedy when it serves to protect the integrity of the proceedings and the trial rights of all the defendants. Thus for all of the above reasons why Dr. Sabir's trial should be severed from that of each of his co-defendants. *Zafiro v. United States*, 506 U.S. 534 (1993).

## POINT V

### DISCLOSURE OF STATEMENTS OF INTERVIEWED INDIVIDUALS

The defendant RAFIQ SABIR moves, in accordance with the Supreme Court decision *Kyles v. Whitley*, 514 U.S. 419 (1995), for the production of [1] any contradictory or inconsistent statements made to any law enforcement personnel/prosecutors by any individual[s], regardless of whether the government intends to call those individuals in its direct case; and [2] any evidence that would tend to inculpate someone other than RAFIQ SABIR in any count in the indictment, overt act; and [3] or any evidence which

is inconsistent with the theory of the government's case, as set forth in its indictment, as it pertains to the role or activity of RAFIQ SABIR.

The essence of the government's case will be the testimony of the witnesses and or cooperators, who identified RAFIQ SABIR as a participant in the various acts. Upon information and belief, the government has interviewed several cooperators and witnesses in connection with the investigation of this case. Upon further information and belief, many of these individuals have made statements which are contradictory or inconsistent with statements of other witnesses and/or cooperators. Upon information and belief, many of these individuals have made statements which are contradictory or inconsistent with the theory of the government's case against RAFIQ SABIR, as set forth in the indictment.

Accordingly, RAFIQ SABIR requests that the government provide him with the statements of any individual which are: [1] inconsistent or contradictory with prior statements made by that individual; [2] inconsistent or contradictory with the statements of others interviewed; and [3] inconsistent or contradictory with the government's theory of prosecution in its case against the defendant RAFIQ SABIR.

The defendant requests the production of these statements or evidence, whether the government intends to call the individual cooperator[s] or codefendant[s] as a witness.

The Kyles decision itself involved a New Orleans, Louisiana homicide prosecution, where the police withheld from the prosecutor inconsistent statements of

its witnesses and other evidence tending to implicate another individual. When the defense filed a detailed pre-trial motion for the disclosure of <u>Brady</u> material, the prosecution filed the routine "boiler plate" response that no exculpatory evidence existed. After a jury was unable to reach a verdict in the first trial, the defendant was convicted on re-trial and was sentenced to death. It was during the post judgment proceedings that the defendant Kyles discovered the existence of overwhelming exculpatory evidence in the police files.

When the case reached the United States Supreme Court, the Court determined that a <u>Brady</u> violation existed when the Louisiana state prosecutor suppressed a series of inconsistent and contradictory statements made by its main informant and other civilian eyewitnesses concerning physical evidence seized and the identification of the defendant as a participant.

Although, the opinion in <u>*Kyles*</u> is a fact-based analysis of whether there was, in fact, a "reasonable probability" that the suppressed statements would have lead to a different result by the jury, the Court took the opportunity to address the prosecutor's affirmative obligations under *Brady*.

In *Kyles* the Louisiana state prosecutor argued that it should not be held accountable under both *Bagley* and *Brady* for evidence known "only" to the police investigators and not known to the prosecutor. Justice Souter specifically rejected this narrow view of prosecutorial responsibility.

any argument for excusing a prosecutor from disclosing what he does not happen to know about boils down to a plea to substitute the police for the prosecutor, and even for the courts themselves, as the final arbiters of the government's obligation to ensure a fair trial.

*Kyles*, supra.

The Court concluded that the "prosecutor has a duty to learn of any favorable evidence known to others acting on the government's behalf in the case, including the police." *Kyles*, supra. Citing *Giglio v. United States*, 405 U.S. 150, 154 (1972), Justice Souter recognized that "procedures and regulations" can be established to insure the communication of exculpatory evidence between police investigator and prosecutor, so that the prosecutor can meet its *Brady* obligations.

Therefore, the prosecution has an affirmative duty to specifically inquire of each investigating officer whether he or she is aware of any exculpatory information. And, Justice Souter was confident that the "prudent prosecutor will resolve doubtful questions in favor of disclosure." id. at 509 (quoting *United States v. Agurs*, 427 U.S. 97, 108 [1976]).

As stated above, the defendant is entitled to the disclosure, whether or not the government intends to call the individuals as witness. The Supreme Court reasoned that the defendant had the right to call the informant as an adverse witness and examine on the inconsistencies, question the investigating police officers on their

knowledge of the inconsistent statements, or used them to attack the reliability of the investigation itself.

Further, the defendant requests production of any inconsistent statement of any cooperator, witness and/or other evidence that might raise questions concerning the thoroughness or good faith of the investigation.

**[a]  Disclosure of evidence pertaining to the credibility of  informants & cooperating witnesses.**

Finally, the defendant requests production of any inconsistent statement of any confidential informant/cooperator and other evidence that might raise questions concerning the reliability or integrity of any confidential informant/cooperator or former cooperator.  *Giglio v. United States*, 405 U.S. 150, 154 (1972).

As stated above, it is likely that the testimony of confidential informants and cooperating witnesses is essential to the government's case.   And, the credibility of these witnesses will impact the jury's ultimate verdict.   The United States Supreme Court has long held that a defendant has a 5th amendment due process right to any evidence that may be used to challenge the credibility of such witnesses.   *Giglio v. United States*, 405 U.S. 150 (1972).

The request for *Giglio* material is distinguished from the request made pursuant to *Kyles*.   While both *Kyles* material and *Giglio* material are discoverable under *Brady v. Maryland*, 427 U.S. 83 (1963), they are both conceptually distinct.  In *Kyles* the Supreme Court held that a *Brady* violation exists where the prosecution fails to furnish the

defense with inconsistent and contradictory statements of an informant which have a "reasonable probability" to impact the jury's consideration of the *charged conduct*. In *Giglio*, the Supreme Court held that when the reliability of a witness is central to the case, evidence affecting that the credibility of that witness falls within the rule of *Brady v. Maryland*, 427 U.S. 83 (1963).

In *Brady v. Maryland*, 427 U.S. 83 (1963), itself, the Supreme Court affirmed the reversal of a state court homicide conviction because the prosecution, despite the defendant's attorney's request to produce statements, withheld a co-defendant's statement that the co-defendant, not the defendant, had actually killed the victim.

> We now hold that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.

*Brady*, id. at 87.

Under *Brady* and its progeny, the government has an affirmative duty to disclose favorable evidence known to it, even where that has been no specific disclosure request is made by the defense. *United States v. Bagley*, 473 U.S. 667, 678 (1985); *United States v. Payne*, 63 F.3d 1200, 1208 (2d Cir. 1995). As stated above, this rule encompasses both exculpatory and impeachment evidence. *Wood v. Bartholomew*, 516 U.S. 1 (1995).

## POINT VI

## EVIDENCE OF UNCHARGED CRIMES OR OTHER BAD ACTS

The defendant RAFIQ SABIR moves pursuant to Federal Rule of Evidence 404(b) to preclude the government from offering at her trial evidence of uncharged crimes, or in the alternative, requests an order, pursuant to Fed. Rule of Crim. Proc. 16 (a)(1)©), directing the government to disclose any and all acts which the government would seek to introduce against the defendant pursuant to Federal Rule of Evidence 404(b) in such sufficient and reasonable time that the defendant may make a 404(b) motion to preclude the introduction of such evidence.

As explained below, this evidence is discoverable under Rule 16 because (a) it is "material to the preparation of the defense," and (b) much of it constitutes evidence that government intends to introduce as "evidence in chief."

A defendant in a criminal case must be afforded "a fair opportunity to meet the critical and damaging proof of an offense not presented against him in the indictment." *United States v. Baum*, 482 F.2d 1325, 1332 (2d Cir. 1973). In this way, a defendant may seek pre-trial rulings to bar the admission of such evidence and at the same time also prepare to meet any such evidence ruled admissible after the pre-trial rulings. Indeed, in *Baum*, the Second Circuit reversed a conviction where the government failed to give adequate notice of other crimes evidence. The Court stated:

> Confronted for the first time with the accusation of prior criminal conduct and the identity of the accuser, the defendant had little or no opportunity to meet the impact of this attack in the midst of the trial. This precarious predicament was precipitated by the prosecutor.

*United States v. Baum*, 482 at 1331.

*Baum* offers compelling support for pre-trial disclosure of similar act evidence. In *United States v. Davidoff*, 845 F.2d 1151 (2d Cir. 1988), the Second Circuit reversed a R.I.C.O. conviction where the government had offered proof of racketeering activity that it had refused to identify in a bill of particulars. The Second Circuit stated:

> We do not mean to imply that even in a RICO case the prosecution must always disclose in advance of trial every act it will prove that may violate some criminal statute. But here it is simply unrealistic to think that a defendant preparing to meet charges of extorting funds from one company had a fair opportunity to defend against allegations of extortion against unrelated companies, allegations not made prior to trial.

*United States v. Davidoff*, 845 F.2d at 1154.

Here, the defendant RAFIQ SABIR is presented with a situation similar to the defendant in *Davidoff*. Although the conspiracy charged in the indictment only spanned a short time period, it would be both unfair and "unrealistic" to expect RAFIQ SABIR to defend against other allegations of which he has no notice.

In the Second Circuit evidence of uncharged crimes are admissible as long as the evidence of the uncharged acts are relevant to some disputed issue in the trial and that and that the evidence does not show a propensity for criminality on the part of the defendant, *United States v. Brennan*, 798 F.2d 581 (2d Cir. 1986).

Here the applicable trial issue is whether or not the defendant was part of a conspiracy which provided material support or resources to a foreign terrorist organization.

Specifically, the issue for the defendant RAFIQ SABIR is whether he participated in the conduct and affairs of that conspiracy which, as stated above, included, inter alia, the conspiracy.

In *Huddleston v. United States*, 485 U.S. 681 (1988), the United States Supreme Court overruled the Second Circuit's then established rule that similar act evidence could be admitted only where the government established the existence of that act by a preponderance of the evidence. Under *Huddleston*, the government need only present evidence that would allow the jury to "reasonably conclude" that the defendant committed the act. Pre-trial disclosure of similar act evidence is therefore all the more "material" to the preparation of the defense, in light of *Huddleston's* relaxation of the government's burden.

While the Supreme Court ruled in *Huddleston* that the District Court was not required to determine that an uncharged crime or act was proved by a preponderance of the evidence before admitting it, the Court established a four pronged test which must be satisfied before evidence of uncharged crimes are admitted. The evidence sought to be admitted: (1) Be offered for a proper purpose as defined in Federal Rule of Evidence 404(b); (2) Satisfy Federal Rule of Evidence 402 as enforced by Federal Rule of Evidence 104(b); (3) Satisfy Federal Rule of Evidence 403 as to the probative value of the evidence outweighing its prejudicial impact; (4) Pursuant to Federal Rule of Evidence 105 a limiting instruction can be given by the court which would properly guide the jury in the manner in which the evidence sought to introduced is to be used.

In *United States v. Gilan*, 967 F.2d 772 (2d Cir. 1992), the Second Circuit ruled that evidence of an uncharged crime could not be admitted unless the jury could reasonably believe the act occurred and the defendant was the actor.

Upon information and belief, several cooperators and other individuals have proffered information to the government concerning RAFIQ SABIR. Some of this information resulted in conduct which is set forth against RAFIQ SABIR in the indictment. However, upon information and belief, the government has obtained information pertaining to prior uncharged acts of the defendant RAFIQ SABIR, from various sources including but not limited to confidential informants and cooperators, which it has yet to disclose or has not been specifically charged as an overt act or in any of the substantive counts.

Accordingly, the defendant moves for an order, pursuant to Fed. Rule of Crim. Proc. 16 (a)(1)©), directing the government to disclose any and all acts which the government would seek to introduce against the defendant pursuant to Federal Rule of Evidence 404(b) in such sufficient and reasonable time that the defendant may make a 404(b) motion to preclude the introduction of such evidence.

## POINT VII

Pursuant to Rule 7(f) of the Federal Rules of Criminal Procedure the defendant requests that the government be directed to provide the defendant with a Bill of Particulars requiring the Government to set forth:

[a]  Specify the beginning time and date of the alleged  agreement referred to in Count One, and the acts upon which the government relies to establish such place and time;

[b] Specify to whom the statement attributed to Dr. Sabir that he would "...provide, among other things, medical support to wounded jihadists" was made;

[c] Specify when the statement attributed to Dr. Sabir that he would "...provide, among other things, medical support to wounded jihadists" was made;

[d] Specify where the statement attributed to Dr. Sabir that he would "...provide, among other things, medical support to wounded jihadists" was made;

[e] The names of all alleged co-conspirators who were not indicted, and a detailed description including exact dates, times, and locations of each individual's specific conduct performed in furtherance of the specific conduct with which the defendant is charged in the conspiracy;

[f] The exact date and time when any and all confidential sources began working for the government;

[g] If the source of the information that Dr. Sabir agreed to provide medical support to wounded jihadists is someone other than the defendant, please specify the date when such information was conveyed and by whom said information was conveyed to the government;

[h] If the source of the information that Dr. Sabir agreed to provide medical support to wounded jihadists is someone other than the defendant, please specify the

time when such information was conveyed and by whom said information was conveyed to the government;

[I] If the source of the information that Dr. Sabir agreed to provide medical support to wounded jihadists is someone other than the defendant, please specify the place where such information was conveyed and by whom said information was conveyed to the government.

## MISCELLANEOUS REQUESTS

RAFIQ SABIR requests the permission of the Court to make further and other motions as the facts of the case and the as yet undisclosed classified information may require as well as the right to join any motions of any other defendant that may be appropriate, particularly the motions of the defendant, TARIK SHAH, with respect to challenges to information and material obtained pursuant to FISA surveillance and the request to challenge any and all materials obtained via any NSA surveillance.

## CONCLUSION

For all the reasons stated above, the suppression of any and all evidence seized pursuant to an unlawful search of the home; the suppression of statements allegedly made by the defendant; the dismissal of counts one and two of the indictment; severance of the defendant's trial; disclosure of statements of witnesses; a Bill of Particulars issued; and to provide notice of 404 (b) evidence, should be granted.

Dated: New York, New York
      July 14, 2006

Respectfully submitted,


EDWARD D. WILFORD
NATALI TODD
Counsel for RAFIQ SABIR
20 Vesey Street Suite 400
New York, New York 10007
(212) 528-2741